UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THOMAS DEWEY ROBERTS,

      Plaintiff,

v.                                     Case No: 6:17-cv-565-Orl-18TBS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## REPORT AND RECOMMENDATION

      Pending before the Court is Defendant, the Commissioner of Social Security's

Motion for Partial Summary Judgment/Dismissal (Doc 13). Accompanying the motion is

the Declaration of Carmine J. Borelli, with attached exhibits (Doc. 14). Plaintiff Thomas

Dewey Roberts has filed an opposition brief (Doc. 19), with an attached appendix. The

transcript of administrative proceedings has been filed (Doc. 22) and supplemented (Doc.

30).[1] Upon due consideration, I respectfully recommend that Defendant's motion be

granted.

### I. Background

      Although Defendant's motion presents with a complicated history, all pertinent

facts are undisputed. Plaintiff applied for a period of disability and Disability Insurance

benefits and for Supplemental Security Income benefits under the Social Security Act

(Doc. 1, ¶7; Tr. 255-262). He was found disabled by administrative law judge ("ALJ")

David Daugherty in February 2007 (Tr. 132-138). At the time, Plaintiff was represented by

---

[1] References to the administrative record will be designated "Tr."

Eric C. Conn, a once prominent Social Security lawyer in Eastern Kentucky (Doc. 1, ¶9).

ALJ Daugherty issued a fully favorable decision without a hearing by relying on evidence

submitted by Attorney Conn from Dr. Frederic Huffnagle (Doc. 14-1; Tr. 132-138, 967-

974; and Doc. 1, ¶ 9).

Eight years later, on May 18, 2015, the Appeals Council of the Social Security

Administration ("SSA") sent notice to Plaintiff that the Office of Inspector General ("OIG")

had informed SSA that "there was reason to believe fraud or similar fault was involved" in

certain cases involving evidence tendered by Conn from four doctors, one of whom is Dr.

Huffnagle (Doc. 1, ¶9; Tr. 157-161).[2]  The notice stated in part:

> Under sections 205(u) and 1631(e)(7) of the Social Security
> Act (Act), SSA must redetermine an individual's disability case
> when there is reason to believe fraud or similar fault was
> involved in that individual's application for benefits. In
> conducting a redetermination, SSA must disregard any
> evidence from one of the medical providers above when the
> information was submitted by representative Eric C. Conn or
> other representatives associated with Mr. Conn's law office.

(Tr. 157). Defendant told Plaintiff it had looked at his case to determine if ALJ Daugherty's

decision was supported by substantial evidence after disregarding the evidence from Dr.

Huffnagle, and concluded that "there is not enough evidence in your file to show that you

are entitled to benefits on or before February 23, 2007..." (Tr. 158). Defendant set aside

---

[2] Attorney Conn, Dr. Adkins, and ALJ Daugherty were charged in an 18-count indictment returned on April 1, 2016 in the U.S. District Court for the Eastern District of Kentucky. See Indictment, U.S. v. Conn, et al., 5:16 cr 22 (E.D. Ky. Apr. 1, 2016). In a related case, on March 24, 2017, Eric Conn pleaded guilty in federal court for his role in a scheme to fraudulently obtain $550 million in federal disability payments. As part of his plea, Conn admitted that he submitted falsified medical documents, and former ALJ Daugherty authored decisions granting disability benefits, in well over 1,700 claimants' cases. Conn admitted that he paid medical professionals to sign medical forms that he fabricated before evaluations of the claimants took place. In his plea, Conn admitted that he routinely prepared and medical professionals signed evaluation reports stating that claimants had limitations considered disabling by Defendant, irrespective of the claimants' actual physical or mental conditions. See Plea Agreement, U.S. v. Conn, et al., 5:17-cr-43 (E.D. Ky. March 24, 2017). On May 12, 2017, Daugherty pleaded guilty in federal court to his role in the scheme. See U.S. v. Daugherty, 5:17-cr-66 (E.D. Ky. May 12, 2017). Dr. Huffnagle is deceased. See Carter v. Colvin, 220 F. Supp. 3d 789, 792 (E.D. Ky. 2016).

ALJ Daugherty's favorable decision and Plaintiff was invited to send more evidence for

consideration (Tr. 159). The notice was returned by the post office so, on September 22,

2015, Defendant resent the letter to Plaintiff, now in Florida, and extended the time for

him to submit additional evidence (Tr. 164).

On October 20, 2015, Defendant notified Plaintiff that it had considered any

evidence submitted along with the other evidence of record, and concluded that there

was insufficient evidence to support ALJ Daugherty's decision (Tr. 139-143). Defendant

also informed Plaintiff that it was sending his case to another ALJ "for the opportunity for

a hearing and new decision" (Tr. 140).

Following several postponements requested by Plaintiff (Tr. 181-184), a new ALJ

conducted a hearing on May 12, 2016, at which Plaintiff appeared with a new

representative (Tr. 58-83). After considering the hearing testimony and relevant evidence,

the new ALJ concluded that there was insufficient evidence in the administrative record to

support Plaintiff's original entitlement to benefits (Tr. 32-55). The Appeals Council denied

Plaintiff's request for review on October 24, 2016, which made the ALJ's June 24, 2016

decision Defendant's final decision (Tr. 10-15).

Plaintiff requested and received extensions of time and filed his complaint in this

Court on March 31, 2017 (Doc. 1). Each of the nine counts of Plaintiff's complaint

incorporates the previous paragraphs and alleges a single additional paragraph. Plaintiff

alleges:

> **Count I** - The Defendant violated Plaintiff's due process rights
> under the Fifth Amendment of the U.S. Constitution. For
> example, it is unconstitutional to deprive the Plaintiff of the
> benefits that he has a legitimate claim of entitlement to based
> on unproven allegations in a secret document that he has not
> been able to contest before a neutral decisionmaker.

**Count II** - The Defendant violated the Administrative Procedure's Act's requirements of formal adjudication at 5 U.S.C. § 556(d)-(e). For example, the basis of the allegations of fraud has never been made part of the record and the Plaintiff has been deprived of an opportunity to present his defense.

**Count III** - The Defendant violated the Social Security Act's requirements for hearings at 42 U.S.C. § 405(b)(1). For example, the Defendant has not made findings of fact with regard to the contested issue of fraud and has never set forth a discussion of the evidence or even adduced the evidence in the Plaintiff's hearing.

**Count IV**- The Defendant violated the Administrative Procedure's Act's requirement at 5 U.S.C. § 554(d) that the adjudicator not "be responsible to or subject to the supervision or direction of an employee or agent engaged in the performance of investigative or prosecuting functions for an agency." For example, because the Office of Inspector General performs investigative functions, its conclusion that there is reason to believe that fraud or similar fault was involved in Plaintiff's application for benefits cannot legally direct the adjudicator's finding.

**Count V**- The Defendant violated the Social Security Act's requirement at 42 U.S.C. §§ 405(u)(1)(A) and 1383(e)(7)(A)(i) that redetermination hearings be initiated "immediately" upon reason to believe that fraud or similar fault was involved. For example, the apparent basis of the "reason to believe" was known to Defendants' predecessors and their subordinates in 2006. Plaintiff is aware of no written statement from a prosecutor that would excuse such delay by the Defendant.

**Count VI**- The [D]efendant violated the Social Security regulations reopening requirements at 20 C.F.R. §§ 404.987-88. For example, a decision can be reopened after four years from the date of the decision only if the Defendant proves it was actually obtained by fraud or similar fault (not just that the Defendant has "reason to believe").

**Count VII** - The [D]efendant's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and thus should be set aside under 5 U.S.C. § 706(2)(A). For example, the Defendant[] avoided the procedural protections afforded in the Act's civil penalties provision at 42 U.S.C. § 1320a-8 or the reopening provisions at 20 C.F.R. §§ 404.987-8 by terming this a "redetermination"

proceeding. In addition, the Defendant's *post-hoc* position that the claimants' procedural rights depend on which branch of her agency determines the "reason to believe" that fraud or similar fault was involved is arbitrary and improper. *See* HALLEX I-1-3-25(C)(4)(a).

**Count VIII**- The Defendant's decision is not supported by substantial evidence. As a factual matter, Plaintiff was disabled during the entire period in question, and continues to be.

**Count IX** - The Defendant's delay in commencing the redetermination of Plaintiff's claim renders the redetermination barred by the doctrine of laches.

(Doc. 1, ¶¶ 19-36).

Plaintiff demands that Defendant's adverse decision be set aside and that he be found entitled to benefits. Plaintiff requests that the "decisions of the Defendant to subject the Plaintiff to the redetermination hearing and terminate Plaintiff's benefits be vacated for violating Plaintiff's rights under the Constitution, statutes, or regulations" (Id., Prayer for Relief ¶ 4). Plaintiff also asks that Defendant be enjoined from redetermining his entitlement to benefits previously adjudicated "until such time as proper rules are promulgated by the Defendant that provide all rights, privileges, and protections accorded to Plaintiff by the laws of the United States …" (Id., ¶ 5).

The motion before the Court, framed as a motion to dismiss all counts except Count IX, followed (Doc. 13). Because both parties attached exhibits to their papers, I converted the motion to one seeking partial summary judgment, and allowed both sides to make additional filings and argument (Doc. 21). Defendant filed the entire certified administrative record (Docs. 22, 29-30). Although I denied Plaintiff's request for judicial notice of a document titled "Supplemental Security Income Fraud Involving Middlemen: Hearing Before the Subcomm. on Oversight & the Subcomm. on Human Res. of the H. Comm. of Ways & Means, 103d Cong. 83-84, 89-90 (1994) (statement of SSA

Commissioner Shirley Chater)" (Doc. 26), the denial was without prejudice to refiling upon a more specific showing (Doc. 27). No renewed motion has been made and I have concluded that the record is now as complete as the parties care to make it.

## II. Discussion

### Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. Id. In determining whether a genuine dispute of material fact exists, the Court must read the record and the evidence presented in the light most favorable to the non-moving party. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden then the burden shifts to the non-moving party to "go beyond the pleadings," meaning the non-movant must either (i) present specific evidence showing that there is a genuine issue of material fact; or (ii) show by other means that the moving party is not entitled to judgment as a matter of law. Id. at 324–26. In reviewing the record "the Court may not undertake the jury's function of weighing the evidence properly offered by the parties." Gordilis v. Ocean Drive Limousines, Inc., No. 12-cv-24358-JLK, 2014 WL

2214274, *1 (S.D. Fla. May 28, 2014), citing <u>Latimer v. Roaring Toyz, Inc.</u>, 601 F.3d 1224, 1237 (11th Cir.2010) ("Neither we nor the district court are to undertake credibility determinations or weigh the evidence.").

<u>Analysis</u>

The issues presented have not been addressed by the Eleventh Circuit, and there is presently no controlling opinion on point. However, because the fallout from the Conn/Daugherty fraud occurred primarily in Kentucky, several courts there and one in West Virginia have addressed these issues directly, and my analysis of those decisions informs my findings and recommendation.

a. The Redetermination Process

Under the Social Security Act, Defendant is required to redetermine an individual's entitlement to benefits at any time that there is "reason to believe that fraud or similar fault was involved in the application of the individual for such benefits." 42 U.S.C. §§ 405(u)(1)(A) and 1383(e)(7)(A)(i). The Act describes the redetermination process Defendant must undertake when the case is referred to it by the OIG or when Defendant uncovers fraud itself. By statutory mandate, as soon as the OIG "has reason to believe that fraud was involved in the application of an individual for monthly insurance benefits", the OIG must refer the information, including the individual claimant at issue, to Defendant. <u>See</u> 42 U.S.C. § 1320a-8(1); <u>Robertson v. Berryhill,</u> No. CV 3:16-3846, 2017 WL 1170873, at *1 (S.D.W. Va. Mar. 28, 2017). After this referral, or when Defendant through its own investigation has reason to believe fraud or similar fault is involved, Defendant "shall immediately redetermine" those cases involving fraud or similar fault. 42 U.S.C. § 405(u)(1)(A). Defendant is required as part of this redetermination process to "disregard any evidence if there is reason to believe that fraud or similar fault was

involved in the providing of such evidence." 42 U.S.C. §§ 405(u)(1)(B) and

1383(e)(7)(A)(ii). As explained in <u>Robertson</u>:

> A redetermination hearing decides whether the disability claimant qualified for benefits at the time of the original application. <u>See</u> Hearings, Appeals, & Litigation Law Manual (HALLEX) I-1-3-25(C)(3) ("[A]n adjudicator will be directed to consider the claim(s) only through the date of the final and binding determination or decision on the beneficiary's or recipient's application for benefits."). The adjudicator's decision must rely only on new evidence and evidence remaining in the file after excluding the tainted evidence as mandated by § 405(u). HALLEX I-1-3-25(C)(4)(c). Interpreting the language in § 405(u), HALLEX provides that "adjudicators do not have discretion to reconsider the issue of whether the identified evidence should be disregarded when based on an OIG referral...." HALLEX I-1-3-25(C)(4)(a). A claimant can appeal the adjudicator's decision to discontinue disability benefits, but when based on an OIG referral, "the beneficiary or recipient may not appeal the agency's statutory mandate to conduct the redetermination or to disregard evidence...." HALLEX I-1-3-25(C)(6).

2017 WL 1170873, at *2.

Social Security Ruling 16-1p makes clear that "[f]raud and similar fault redeterminations under sections 205(u) and 1631(e)(7) of the Act are distinct from reopenings as described in 20 CFR 404.987–404.996 and 20 CFR 416.1487–416.1494." SSR 16-1p n.1. Section (D)(3) of the same ruling states that "[a]n individual may appeal our finding of fraud or similar fault. However, we will not administratively review information provided by SSA's Office of the Inspector General under section 1129(l) of the Act regarding its reason to believe that fraud was involved in the individual's application for benefits."[3]  It is undisputed that Defendant followed this procedure in Plaintiff's case.

---

[3] The effective date of this Ruling was March 14, 2016. <u>See</u> SSR 16-1p, 2016 WL 1029284. The administrative decision in this case was rendered June 24, 2016 (Tr. 32-55).

b. Due Process – Count I

Count I of Plaintiff's complaint alleges that Defendant violated Plaintiff's due process rights under the Fifth Amendment to the U.S. Constitution. The Due Process Clause guarantees a claimant's right "to be heard at a meaningful time in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Plaintiff argues that by not requiring any evidence on the issue of fraud in the redetermination process, Defendant has interpreted § 1383(e)(7) to have created a presumption as to its existence. Plaintiff also contends that by not allowing the existence of fraud to be challenged by the recipient of the benefits, the presumption is made irrebuttable, all in violation of the minimum protections of due process. Defendant maintains that Plaintiff's argument is both factually and legally unsound, noting that it has been rejected by other courts. On review, I see no due process violation.

Defendant did not find that Plaintiff engaged in fraud and it did not terminate his benefits based on an alleged "secret document" (Doc. 1, ¶ 20). By law, Defendant cannot terminate an individual's benefits based on suspected fraud alone. 42 U.S.C. §§ 405(u), 1383(e)(7); see, e.g., SSR 16-1p (Mar. 14, 2016). Rather, as explained by the Robertson court in addressing and rejecting an identical challenge:

> Although Plaintiff could not challenge the determination of possible fraud in the original disability application, the redetermination hearing satisfies constitutional due process by allowing Plaintiff to object to the factual determination that directly formed the ALJ's decision to terminate benefits. The final decision that Plaintiff did not qualify for disability benefits did not turn on the fraud determination; the decision turned on the sufficiency of evidence. The OIG's referral based on the reason to believe fraud existed triggered the redetermination process, and Plaintiff was given the full opportunity, with assistance from the SSA, to develop new evidence to prove his disability.

Robertson, 2017 WL 1170873, at *5; See also Carter v. Colvin, 220 F. Supp. 3d 789, 811 (E.D. Ky. 2016) ("Because the procedural protections afforded by the Agency satisfy any concern about the exclusion of suspect evidence, plaintiffs' due process arguments are also unconvincing."); Perkins v. Colvin, 224 F. Supp. 3d 575, 579 (E.D. Ky. 2016) ("the decision to revoke Perkins's benefits did not hinge on the fraud allegation. Rather, the revocation was premised on the lack of sufficient evidence to support the initial benefits award. Thus, because Perkins was given a full opportunity to supplement and/or develop new evidence to substitute for the excluded evidence (and indirectly rebut the allegations of fraud), he was not denied due process"); but see Hicks v. Colvin, 214 F.Supp.3d 627, 645 (E.D. Ky. Oct. 12, 2016) (granting a plaintiff's motion for summary judgment and denying Defendant's cross motion on due process grounds).[4]  I am persuaded by the reasoning in Robertson, Carter,[5] and Perkins. "[B]eing subject to a redetermination without a threshold adjudication does not violate due process." Carter, 220 F. Supp. 3d at 804. Therefore, because there is no issue of disputed material fact, I recommend that summary judgment for Defendant be entered on this count.

c. The APA – Counts II and IV

Plaintiff alleges in Counts II and IV of his complaint that in the handling of his case,

---

[4] Hicks, Perkins and related cases are currently on appeal to the Sixth Circuit.

[5] The Robertson and Carter courts applied the Mathews v. Eldridge balancing test, which directs courts to weigh three factors in evaluating procedural due process claims:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Carter, 220 F. Supp. 3d at 799, citing Eldridge, 424 U.S. at 334-35. As the arguments presented by the parties here are identical to those presented in Robertson and Carter, I find the analysis in those cases to be directly on point and compelling.

Defendant violated the Administrative Procedures Act ("APA"). Specifically, Plaintiff claims that Defendant violated the APA's requirements of formal adjudication at 5 U.S.C. § 556(d)-(e) because "the basis of the allegations of fraud has never been made part of the record and the Plaintiff has been deprived of an opportunity to present his defense." (Count II). Plaintiff also alleges that Defendant violated the APA's requirement at 5 U.S.C. § 554(d) that the adjudicator not "be responsible to or subject to the supervision or direction of an employee or agent engaged in the performance of investigative or prosecuting functions for an agency" (Count IV). Plaintiff contends that because the OIG performs investigative functions, its conclusion that there is reason to believe that fraud or similar fault was involved in Plaintiff's application for benefits cannot legally direct the adjudicator's finding. Defendant moves for summary judgment on both of these counts, arguing that they fail to state causes of action. I agree with Defendant.

The APA's formal adjudication requirements do not apply to the redetermination process. The APA's formal hearing requirements are limited to adjudications "required by statute to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554(a); <u>Taylor v. Dist. Eng'r, U. S. Army Corps of Engineers, Jacksonville, Fla.</u>, 567 F.2d 1332, 1336 (5th Cir. 1978) ("Section 554, however, does not affect all adjudications, but rather this section comes into play only in cases of adjudication which are required by statute to be determined on the record after an opportunity for an agency hearing.").[6] Sections 205(u) and 1631(e)(7) of the Act do not require a hearing prior to a redetermination. As Judge Chambers found in <u>Robertson</u>:

> A plain reading of the APA statute shows that the procedural protections apply to formal adjudications only. The OIG

---

[6]   <u>See</u> <u>Bonner v. City of Prichard, Ala.</u>, 661 F.2d 1206, 1209 (11th Cir.1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

> determination cannot be classified as a formal adjudication because there is no statutory mandate that the determination result from a hearing held on the record. All of Plaintiff's allegations surround the inability to challenge this OIG determination of fraud, but none of these alleged violations can support a claim because the OIG determinations are not required to be on record. See Carter, 2016 WL 6794790, at 16 (coming to the same conclusion). Therefore, Plaintiff's allegations regarding § 554 and § 556 fail to state a claim.

Robertson, 2017 WL 1170873, at *16. Consistent with Robertson, I find that Count II is not viable.

Plaintiff's contention that adjudicators are effectively being directed by investigators or prosecutors in initiating redeterminations also fails under scrutiny. The referral under the Act simply triggers a process whereby Defendant is to decide the outcome. As the Carter court observed in rejecting this argument:

> [T]he plaintiffs allege that the OIG's involvement in the redetermination process is a violation of 5 U.S.C. § 554(d)'s prohibition on third party involvement in adjudications. This prohibition, as part of the rules for on-the-record adjudication, does not apply to the redeterminations. Even if redeterminations were subject to on-the-record adjudication, the OIG did not direct the outcome or otherwise involve itself in the redetermination process. And because a separate statute mandates the referral process, this provision of § 554(d) would be without effect.

Carter, 220 F. Supp. 3d at 810. Thus, Defendant is also entitled to summary judgment on Count IV.

d. The Act's hearing requirement – Count III

In Count III, Plaintiff alleges that Defendant violated the Act's requirements for hearings at 42 U.S.C. § 405(b)(1), in that it has not discussed the evidence of fraud nor made findings of fact with regard to the contested issue of fraud. Defendant moves for summary judgment on this count, arguing that the redetermination process does not

conflict with this section of the Act. Section 405(b)(1) provides, in part:

> (b) Administrative determination of entitlement to benefits; findings of fact; hearings; investigations; evidentiary hearings in reconsiderations of disability benefit terminations; subsequent applications

> (1) The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based. Upon request by any such individual or upon request by a wife, divorced wife, widow, surviving divorced wife, surviving divorced mother, surviving divorced father, husband, divorced husband, widower, surviving divorced husband, child, or parent who makes a showing in writing that his or her rights may be prejudiced by any decision the Commissioner of Social Security has rendered, the Commissioner shall give such applicant and such other individual reasonable notice and opportunity for a hearing with respect to such decision, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse the Commissioner's findings of fact and such decision.

42 U.S.C.A. § 405(b)(1).

According to Plaintiff: "It is clear that under § 405(b)(1) Plaintiff is entitled to a formal hearing with respect to Defendant's decision to terminate his benefits based on a redetermination of his original application." I agree, and the facts show that Plaintiff had this hearing. But, Plaintiff goes further, and – without citation – argues that "the hearing must address all material issues that pertain to the redetermination, including most importantly the issue of whether there is fraud that justifies exclusion of material evidence and revision of a final determination of disability." (Doc. 19 at 17). Nothing in § 405(b)(1) mandates this result. Plaintiff's argument assumes (incorrectly) that the disability decision

on redetermination turned on the existence of suspected fraud that Plaintiff could not challenge. As I have already explained, the focus on redetermination is whether Plaintiff was disabled during the time period at issue, not whether Plaintiff committed fraud in earlier applications. Plaintiff was given "a full opportunity to supplement and/or develop new evidence to substitute for the excluded evidence (and indirectly rebut the allegations of fraud)." See Perkins, 224 F. Supp. 3d at 579. To the extent Plaintiff's argument is couched as a due process issue, the preceding analysis shows that the redetermination process comports with constitutional requirements. Defendant is entitled to summary judgment on Count III.

e. The lack of immediacy – Count V

Count V alleges that Defendant violated the Act's requirement at 42 U.S.C. §§ 405(u)(1)(A) and 1383(e)(7)(A)(i) that redetermination hearings be initiated "immediately" upon reason to believe that fraud or similar fault was involved. Plaintiff claims that the apparent basis of the "reason to believe" fraud was involved was known to Defendant's predecessors and their subordinates in 2006 and there is no known basis for excusing delay. Defendant moves for summary judgment, contending that this claim is factually inaccurate but, in any event, fails to state an actionable claim.

The provision in question provides:

(u) Redetermination of entitlement

(1)(A) The Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits, unless a United States attorney, or equivalent State prosecutor, with jurisdiction over potential or actual related criminal cases, certifies, in writing, that there is a substantial risk that such action by the Commissioner of Social Security with regard to

> beneficiaries in a particular investigation would jeopardize the
> criminal prosecution of a person involved in a suspected
> fraud.

42 U.S.C. § 405(u)(1)(A).[7]  It is undisputed that Plaintiff was found disabled by ALJ

Daugherty in February 2007. It is also undisputed that on May 12, 2015, Defendant

received a referral from the OIG pursuant to section 1129(1) of the Social Security Act, 42

U.S.C. § 1320a-8(1) (Doc. 14, ¶ 3). The referral stated that OIG had "previously provided"

Defendant with information regarding 1,787 individuals formerly represented by attorney

Eric. C. Conn or his firm, and noted that OIG had reason to believe that fraud was

involved in their applications for Social Security benefits (Doc. 14-2). The referral said:

> Specifically, in these cases, **OIG had, and still has**, reason to
> believe that Mr. Conn or his firm submitted pre-completed
> "template" Residual Functional Capacity forms purportedly
> from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D.,
> Frederic Huffnagle, M.D., or David P. Herr, D.O., dated
> between January 2007 and May 2011, in support of the
> individuals' applications for benefits.
>
> SSA OIG understood that SSA would use this information to
> carry out its responsibilities to redetermine cases involving
> fraud or similar fault under sections 205(u) and
> 1631(e)(7)(A)(i) of the Act, 42 U.S.C. §§ 405(u) and
> 1383(e)(7)(A)(i). **The previous referral was with the
> understanding that SSA was not to take any adverse action
> against any individual on the list until further notice.**
>
> This Memorandum is to advise you that we are not aware of
> any objections to SSA moving forward with its administrative

---

[7] Likewise, the SSI provision states:

> (7)(A)(i) The Commissioner of Social Security shall immediately
> redetermine the eligibility of an individual for benefits under this subchapter
> if there is reason to believe that fraud or similar fault was involved in the
> application of the individual for such benefits, unless a United States
> attorney, or equivalent State prosecutor, with jurisdiction over potential or
> actual related criminal cases, certifies, in writing, that there is a substantial
> risk that such action by the Commissioner of Social Security with regard to
> recipients in a particular investigation would jeopardize the criminal
> prosecution of a person involved in a suspected fraud.

42 U.S.C. § 1383(e)(7)(A)(1).

> processing of the redeterminations of the 1,787 individuals whose names were **previously provided by OIG to SSA on July 2, 2014**. As such, **this notice is to inform SSA that it may proceed with its redetermination of the cases of the individuals on the previously transmitted list.**

(Doc. 14-2-emphasis added). Six days later, on May 18, 2015, the Appeals Council sent its first notice to Plaintiff instituting the redetermination process (Doc. 1, ¶ 9; Tr. 157-161).

"According to the Act, the SSA must begin the redetermination process once the referral is made. The fact that an investigation involving the same individuals began years prior does not necessitate the SSA's immediate reaction–only the referral does." Robertson, 2017 WL 1170873, at *11. Defendant acted within a week of receiving the referral of Plaintiff's case.

Sections 205(u) and 1631(e)(7) of the Act specifically contemplate that Defendant may delay taking adverse action if it would jeopardize the criminal prosecution of a person involved in the suspected fraud. See 42 U.S.C. §§ 405(u)(1)(A), 1383(e)(7)(A)(i). The OIG may delay referring cases to the agency for the same reason. 42 U.S.C. § 1320a-8(l). Here, the initial letter identifying the individuals described in the referral letter was sent to Defendant on July 2, 2014, "with the understanding that SSA was not to take any adverse action against any individual on the list until further notice." Although the record does not include a certification from a prosecutor, as contemplated in the statutes, the language of the referral, the history of the investigation as set forth in related cases,[8]

---

[8] As the Carter court explained: "Many years passed between the initial accusations of wrongdoing (2007) and the initial (purported) reports to the OIG (2009), and action being taken on the redeterminations (2015). This lapse is at least partially understandable, given the process of investigating and substantiating these claims takes time, especially where internal misconduct and alleged cover-ups were involved. The statute contemplates delay so as to not interfere with criminal or civil proceedings." Carter, 220 F. Supp. 3d at 808.

and the fact that Mr. Conn, ALJ Daugherty and Dr. Adkins were indicted on April 1, 2016,

make clear that a criminal investigation was underway or at least contemplated when the

July 2014 initial letter was sent.

Even if Defendant erred in failing to act immediately upon receipt of the initial 2014

letter, Plaintiff fails to convince me that there is a remedy for this error. "The statute does

not contain language regarding consequences to the SSA if the agency fails to act with

immediacy. The fact that the SSA can reopen a disability determination at any time for

fraud or similar fault supports the idea that the immediacy requirement was created to

protect the public fisc rather than provide a claimant with a speedy redetermination."

Robertson, 2017 WL 1170873, at *10; see also Carter, 220 F. Supp. 3d at 809 ("no

evidence in the statutory language to suggest that those who received benefits through a

fraudulent scheme (whether witting or unwitting participants) are the class of individual

meant to be protected by the immediacy requirement"). In fact, Plaintiff cites no case

where such a remedy was granted.[9]  Defendant is entitled to summary judgment on

Count V.

f. Reopening vs. redetermination and arbitrary and capricious interpretations-
Counts VI and VII

Plaintiff alleges that Defendant violated its regulatory reopening requirements at 20

C.F.R. §§ 404.987-88, in that a decision can be reopened after four years from the date of

the decision only if Defendant proves it was actually obtained by fraud or similar fault (not

just that Defendant has "reason to believe") (Count VI). In a related count, Plaintiff claims

that Defendant's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not

---

[9] Plaintiff does not directly address this count in his brief. To the extent Plaintiff generally relies on Hicks v. Colvin, 214 F. Supp. 3d 627 (E.D. Ky. 2016), order corrected sub nom. Hicks v. Berryhill, No. CV 16-154-ART, 2017 WL 1227929 (E.D. Ky. Mar. 31, 2017), that case turned on a due process analysis.

in accordance with law" and thus should be set aside under 5 U.S.C. § 706(2)(A) (Count

VII). As grounds, Plaintiff alleges that Defendant avoided the procedural protections

provided under the Act's civil penalties provision at 42 U.S.C. § 1320a-8 and the

reopening provisions at 20 C.F.R. §§ 404.987-8 by terming this a "redetermination"

proceeding. Plaintiff also argues that Defendant's post-hoc position that the claimants'

procedural rights depend on which branch of her agency determines the "reason to

believe" that fraud or similar fault was involved is arbitrary and improper. Defendant

moves for summary judgment on the ground that the reopening regulations do not govern

the redetermination process and its interpretation was not arbitrary or capricious as it

followed the mandatory language of the statute. On review, I am persuaded by

Defendant's arguments.

Plaintiff's contentions have been directly addressed and rejected by other courts.

As Judge Chambers summarized, in denying a plaintiff's motion for injunctive relief in a

suit challenging a redetermination:

> First, Plaintiff Robertson asserts that Defendant carried out a
> "reopening" of his claim but failed to follow the regulating
> procedures required to "reopen" a claim. The Court finds this
> argument unconvincing. Here, Defendant is exercising
> authority under 42 U.S.C. § 405(u), following a referral by the
> OIG pursuant to 42 U.S.C. § 1320a-8. As parts of the same
> legislative enactment, these statutes provide Defendant with
> authority to redetermine a claim when there is "reason to
> believe" fraud was involved. 42 U.S.C. § 405(u). Congress
> labeled this authority a "redetermination"; therefore, Defendant
> need not act under the authority required to "reopen" a claim.

Robertson v. Colvin, No. CV 3:16-2113, 2016 WL 3406134, at *2 (S.D.W.Va. June 17,

2016). Judge Chambers' analysis when the case presented on the merits is instructive:

> Plaintiff next argues that redeterminations need to follow
> reopening procedures that require a finding of fraud before
> revising benefits, but the Court finds that redeterminations

exist separately from the reopening procedures. Reopenings require the SSA to make a finding of fraud or similar fault before reopening and revising a claimant's benefits. See 20 C.F.R. § 404.998. Therefore, following the directives in § 405(b), a claimant would be able to challenge the SSA's determination of fraud as part of the Commissioner's final decision.[fn omitted] Redeterminations stemming from OIG investigations, on the other hand, provide for an independent determination of fraud that occurs separate from the SSA. The OIG referral is based on reason to believe that fraud existed, but that determination does not come from the Commissioner and does not affect the Commissioner's final decision to award or terminate a claimant's benefits on redetermination.[footnote omitted] Therefore, the SSA's interpretation that reopenings exist separately from redeterminations follows the different structure provided in the Act itself. Moreover, when Congress uses different language to describe a new process, the Court will consider that differentiation important and deliberate. See Bd. of Educ. of Westside Cmty. Sch. v. Mergens by & through Mergens, 496 U.S. 226, 242 (1990) ("Congress' deliberate choice to use a different term ... can only mean that it intended to establish a standard different from the one [previously] established.").

Robertson v. Berryhill, No. CV 3:16-3846, 2017 WL 1170873, at *13 (S.D.W. Va. Mar. 28, 2017).

Plaintiff relies heavily on legislative history to conflate the reopening process with the redetermination process. But, "it is clear that Congress expected a much different process than the one already in place. The ensuing legislation, therefore, termed the new process a 'redetermination.'" Carter, 220 F. Supp. 3d at 807. I agree with Judge Chambers that "[t]he Court cannot state that the SSA's interpretation, that the redetermination process exists as a separate procedure from reopenings and as separate from the hearing requirements in § 405(b), is unreasonable based on the statutory construction." Robertson, 2017 WL 1170873 at *14 (noting, among other things, that "the fact that Congress gave the OIG authority to find fraud and refer the case to the SSA shows differentiation from the reopening process."). As reopening and redetermination

are two different things, with separate procedures adopted pursuant to Congress'

direction, Defendant did not act arbitrarily or capriciously in creating and following the

redetermination procedure. To the extent Plaintiff's claims in Count VI and Count VII are

based on the premise that Defendant is required to have followed the reopening

procedures and not the redetermination procedures, they are not supportable, as a matter

of law.

 For similar reasons, I am not persuaded that the Social Security Rulings and

procedures set forth in HALLEX I-1-3-25 improperly abdicate the principles of res

judicata, as Plaintiff argues in his brief. The Social Security Act directs that "[t]he findings

and decisions of the Commissioner ... after a hearing shall be binding upon all individuals

who were parties to such hearing. No findings of fact or decision of the Commissioner of

Social Security shall be reviewed by any person, tribunal, or governmental agency except

as herein provided." 42 U.S.C. § 405(h). However, the Act also gives Defendant the

authority to "make rules and regulations and to establish procedures ... which are

necessary or appropriate to carry out such provisions, and shall adopt reasonable and

proper rules and regulations to regulate and provide for the nature and extent of the

proofs and evidence and the method of taking and furnishing the same in order to

establish the right to benefits hereunder." 42 U.S.C. § 405(a). "In accordance with the Act,

the Commissioner's regulations direct that res judicata applies where the Commissioner

has made a previous final decision based on the "*same* facts and the same issue or

issues." 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1)." Randolph v. Astrue, 291 F. App'x

979, 981 (11th Cir. 2008) (emphasis added); see also Drummond v. Comm'r of Soc. Sec.,

126 F.3d 837, 842 (6th Cir.1997) (concluding that "[w]hen the Commissioner has made a

final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination *absent a change in circumstances*") (emphasis added).

Plaintiff contends: "By dispensing with the requirement that fraud be proven, and permitting redeterminations based on no evidence of record whatsoever that supports the validity of SSA's decision to redetermine, HALLEX I-1-3-25 attempts to abrogate res judicata and allow Defendant to relitigate Plaintiff's 2007 determination of disability with a new judge deciding the case differently on the same evidence considered in 2007." (Doc. 19, p. 20). Plaintiff's argument misses the mark. As is readily apparent, a redetermination is not a relitigation on the same facts and same evidence. In Plaintiff's case the evidence from Dr. Huffnagle was excluded and Plaintiff was given the opportunity to supplement the record with new evidence, including a new administrative hearing. Plaintiff's contention also ignores the new and changed circumstances giving rise to the redetermination - namely, the Conn/Daugherty fraud.[10]  Res judicata has no applicability here. See Robertson, 2017 WL 1170873, at *15 (dismissing claim as the plaintiff "cannot maintain a cause of action for violation of the Act under res judicata principles.").

Plaintiff's remaining arguments are similarly unpersuasive. His contention that Defendant's "decision" to redetermine his benefits under sections 205(u) and 1631(e)(7) of the Act was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under 5 U.S.C. § 706(2)(A) (Compl. ¶ 28), is untenable. The statute says Defendant "shall" redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits. 42 U.S.C.A. § 405(u). "Shall"

---

[10]  Although Plaintiff argues that recent developments in the criminal proceedings should not impact the Court's analysis, it is worth noting that the decision appealed here was rendered after the indictment.

is mandatory. See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 35 (1998) ("The Panel's instruction comes in terms of the mandatory 'shall,' which normally creates an obligation impervious to judicial discretion."). Once Defendant receives a § 1129(l) referral from the OIG, Defendant does not have the discretion to decide whether to conduct a redetermination. See 42 U.S.C. §§ 405(u), 1320a-8(l), 1383(e)(7). In sum, Defendant could not abuse discretion it did not have.

Plaintiff also argues that Defendant's position that claimants' procedural rights depend on which branch of the agency determines the "reason to believe" that fraud was involved, is arbitrary and improper (Doc. 1, ¶ 28). As I have already explained, Defendant followed the language of the statute. Congress did not provide the individual with an independent procedural process by which to challenge OIG's "reason to believe" at this stage, where it did so with respect to Defendant's findings. Plaintiff's contention is really an objection to the existence of two separate and different procedures. To the extent Plaintiff questions why he does not have an independent procedural process to challenge the OIG's "reason to believe" at the referral stage, as the Supreme Court noted in a different context: "The short answer is that Congress did not write the statute that way." Russello v. United States, 464 U.S. 16, 23 (1983). Because no genuine issue of material fact is in dispute and the law is clear, Defendant's motion for summary judgment on Counts VI and VII should be granted.

g. Laches –Count IX

Count IX alleges that Defendant's delay in commencing the redetermination of Plaintiff's claim renders the redetermination barred by the doctrine of laches. "Laches is an equitable doctrine 'designed to prevent unfairness to a defendant due to a plaintiff's delay in filing suit in the absence of an appropriate statute of limitations.'" Perez v.

Renaissance Arts & Educ., Inc., No. 8:12-CV-514-T-MAP, 2013 WL 5487097, at *5 (M.D. Fla. Sept. 30, 2013), quoting EEOC v. Dresser Indus., Inc., 668 F.2d 1199, 1201 (11th Cir.1982). Laches, as a defense, is not - in and of itself- a cause of action. And, "[i]t is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights." United States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); United States v. Delgado, 321 F.3d 1338, 1348–49 (11th Cir. 2003); citing Summerlin, and United States v. Fernon, 640 F.2d 609, 612 (5th Cir. Unit B Mar.1981) (following Summerlin). Defendant is entitled to summary judgment on Count IX.

### III. Recommendation

Upon consideration of the foregoing, I respectfully recommend that Defendant's motion be **GRANTED** and that:

(1) The Court enter summary judgment for Defendant and against Plaintiff on Counts I, II, III, IV, V, VI, VII and IX of Plaintiff's complaint.

(2) The sole remaining count (Count VIII) should proceed in the usual course.[11]

### IV. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

---

[11] A separate briefing Order will issue.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on October 27, 2017.

_____
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

     Presiding United States District Judge
     Counsel of Record